WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re VistaCare, Inc., Derivative Litigation, ) ) ) ) George Palmetto, et al., ) ) Plaintiffs, ) v. ) ) David A. Freeman, et al., ) ) Defendants. ) ) | No. CIV 04-1739-PHX RCB  O R D E R  CIV 04-1740-PHX-RCB ✓ |

## I. Introduction

On August 20, 2004, Plaintiffs George Palmetto, et al., filed a derivative lawsuit against Defendants David A. Freeman, et al., seeking to stand in the shoes of VistaCare, Inc. ("VistaCare") and bringing claims held by VistaCare. Complt. (doc. 1). On November 23, 2005, Defendants Freeman, Perry G. Fine, William J. McBride, Pete A. Klisares, David W. Faeder, and Geneva B. Johnson ("Individual Defendants") filed a motion to dismiss the case due to a lack of personal jurisdiction. Mot. Lack of P. Jurisdiction (doc. 17). Thereafter, all the defendants filed a motion to

1  dismiss Plaintiffs' consolidated derivative complaint pursuant to
2  Federal Rule of Civil Procedure 12(b)(6). Mot. (doc. 20).[1]
3  　　　　On November 30, 2005, and upon stipulation by the parties, the
4  Court ordered Defendants' motion to dismiss for lack of personal
5  jurisdiction stayed pending resolution of Defendants' motion to
6  dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Order (doc. 26). In
7  addition, the Court determined a specific briefing schedule for
8  Defendants' motion to dismiss for lack of personal jurisdiction,
9  should Defendants' motion to dismiss pursuant to Fed.R.Civ.P.
10 12(b)(6) be denied in whole or in part. Id. Following the Court's
11 order, Defendants' motion to dismiss pursuant to Fed.R.Civ.P.
12 12(b)(6) was fully briefed on February 9, 2006. Reply (doc. 39).[2]
13 Having carefully considered the arguments presented by the parties,
14 the court now rules.

**II. Background Facts**

16 　　　　VistaCare is one of the leading providers of hospice services
17 in the United States. VistaCare receives most of its revenue from
18 Medicare, whose payments are subject to an annual "cap."
19 Generally, the total cap for any specific site is calculated by
20 multiplying the fiscal-year per-patient cap amount by the number of
21 first-time, Medicare-eligible patients enrolled during the cap

---

[1] In the case at bar, the defendants are Richard R. Slager, Mark E. Liebner, Pete A. Klisares, David W. Faeder, Perry G. Fine, Ronald A. Matricaria, William J. McBride, Geneva B. Johnson, and David A. Freeman ("Defendants"). All of the defendants, except for Liebner and Freeman, are the "Director Defendants." The nominal defendant is VistaCare, Inc. ("VistaCare").

[2] In their Reply, Defendants made a request for oral argument on this matter. (doc. 39). Such request is untimely, pursuant to Local Rule 7.2(f). Thus, the Court shall deny Defendants' request.

year, and then adjusting for several factors. If Medicare pays for services during the fiscal years beyond the cap amount, it may seek repayment of the excess.

From about November 2003 to August 2004, VistaCare consistently reported financial growth. However, on August 5, 2004, VistaCare issued a press release announcing its second quarter financial results for the quarter ending June 30, 2004. In that release, VistaCare revised downward its financial projections for the remainder of 2004, in part because it increased reserves against future Medicare cap reimbursements. By the following day's closing, the price of VistaCare's stock decreased by 18%. Thereafter, a press release dated December 6, 2004, revealed that VistaCare faced the accrual of an additional $7.8 million for the Medicare cap, resulting in a net loss for the quarter of $6.2 million. In response to these actions, Plaintiffs filed this litigation.

### III. Standard of Review

A Rule 12(b)(6) motion to dismiss is proper where there is either a "lack of a cognizable legal theory" or the absence of sufficient facts alleged to support a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988). Such a motion may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

> In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them...Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a

cognizable legal theory. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001) (internal citations omitted). The parties agree that Delaware law applies in this matter. Mot. (doc. 20) at 2-3; Resp. (doc. 32) at 4.

**IV. Discussion - Demand Futility**

The decision to bring a lawsuit in the name of a corporation is a responsibility that rests with the board of directors. <u>See Spiegel v. Buntrock</u>, 571 A.2d 767, 773 (Del. 1990). If the majority of the board can weigh the pros and cons of bringing suit without being controlled by outside forces, the board is entitled to decide whether to initiate a lawsuit. <u>Id.</u> at 773-74. This holds true even if meritorious claims are made in a demand; a board may forego litigation if, in exercising its business judgment, the board decides that it is best for the company not to do so. <u>Id.</u> at 777. Because derivative suits brought by shareholders "challenge the propriety of decisions made by directors pursuant to their managerial authority, [courts] have repeatedly held that the stockholder plaintiffs must overcome the powerful presumptions of the business judgment rule before they will be permitted to pursue the derivative claim." <u>Rales v. Blasband</u>, 634 A.2d 927, 933 (Del. 1993).

Delaware Chancery Court Rule 23.1 ("Rule 23.1") provides that a derivative complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors...and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Here, Plaintiffs concede that they never made a demand on VistaCare's board, claiming that to do so would have been "futile." Complt.

-4-

(doc. 1) at ¶ 61.  Thus, Plaintiffs must plead with particularity facts sufficient to support their futility assertion.  See <u>Aronson v. Lewis</u>, 473 A.2d 805, 815 (Del. 1984), <u>overruled on other grounds by</u> <u>Brehm v. Eisner</u>, 746 A.2d 244, 254 (Del. 2000).  Demand futility is judged at the time the plaintiff filed the complaint.  See <u>Harris v. Carter</u>, 582 A.2d 222, 229-30 (Del. Ch. 1990).

The burden to establish demand futility is "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." <u>Levine v. Smith</u>, 591 A.2d 194, 207 (Del. 1991), <u>overruled on other grounds by</u> <u>Brehm v. Eisner</u>, 746 A.2d 244, 254 (Del. 2000).  "What the pleader must set forth are particularized factual statements that are essential to the claim."  <u>Brehm</u>, 746 A.2d at 254.  Conclusory language "does not comply with these fundamental pleading mandates."  <u>Id.</u>  However, a plaintiff is not required to plead evidence inasmuch as discovery is foreclosed.  See <u>Levine</u>, 591 A.2d at 207.  In any event, if a plaintiff fails to meet these stringent requirements, the complaint must be dismissed even if it pleads otherwise meritorious claims.  See <u>Kaufman v. Belmont</u>, 479 A.2d 282, 286 (Del. Ch. 1984).

Actions that may be challenged by a derivative lawsuit fall into one of two categories: (1) an affirmative act undertaken by the directors; or (2) no specific board action is challenged.  See <u>Rales</u>, 634 A.2d at 933-34.  Where a shareholder, such as in the case at bar, does not challenge a specific action or decision of the board, demand may be excused where the complaint raises a reasonable doubt that a majority of the board's directors are disinterested and independent.  <u>Id.</u> at 930.  Under this test, a shareholder establishes that demand would have been futile only if

a majority of the board: (1) faces a substantial likelihood of liability under the specific facts alleged in the derivative complaint; or (2) is controlled by one or more directors who face a substantial likelihood of liability. Id. at 936-37.

In the case at bar, Plaintiffs allege that Defendants caused VistaCare's shares to trade at artificially inflated levels through the issuance of false and misleading statements, and failed to supervise VistaCare so as to properly reserve for the company's Medicare reimbursements. Complt. (doc. 1) at ¶¶ 8-10. The parties do not dispute that Plaintiffs are not challenging an affirmative act by the board, and, thus, must establish demand futility under the test set forth in Rales.

### A. Substantial Likelihood of Liability

In their motion to dismiss, Defendants assert that Plaintiffs have failed to plead particularized facts to create a reasonable doubt that four VistaCare directors - a majority - could independently consider a litigation demand. Mot. (doc. 20) at 5. A director is not independent only if particularly pled facts demonstrate that "a corporate decision [on the demand] will have a materially detrimental impact on a director, but not on the corporation and the stockholders." Rales, 634 A.2d at 936. The key inquiry "is whether the plaintiffs have pled facts that show that...[the] directors face a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand." Guttman v. Huang, 823 A.2d 492, 503 (Del. Ch. 2003). To plead a substantial threat of personal liability, Plaintiffs must set forth particularized facts showing that a defendant either: (1) "personally profited from stock sales while in knowing

possession of material, non-public information[;]" or (2) "committed a non-exculpated breach of fiduciary duty by failing to oversee the company's compliance with legally mandated accounting and disclosure standards."[3] Guttman, 823 A.2d at 503. Here, Defendants assert that Plaintiffs do not allege a single particularized fact that supports either of these two possibilities. Mot. (doc. 20) at 6.

First, Defendants argue that Plaintiffs' insider trading allegations fail to establish the necessary particularized facts required to show demand futility. Id. at 6-7. "[P]laintiffs generally proffer that two directors, Slager and Fine, purportedly engaged in 'illegal insider trading.'"[4] Id. at 6. Specifically, Defendants assert that Plaintiffs fail to raise any facts regarding information that the directors acquired and knew showing that the stock sales were "entered into and completed on the basis of, and because of adverse material non-public information." Id. "Given that Slager and Fine do not face personal liability for insider trading, it cannot be said that they were unable to consider a litigation demand." Id. at 7.

Moreover, Defendants note, and Plaintiffs do not dispute in their response, that all of the stock sales made by Slager and Fine were non-discretionary sales made pursuant to a "10b5-1 stock

---

[3] This type of claim is also known as a Caremark claim, named in reference to In re Caremark Int'l Derivative Litig., 698 A.2d 959, 967 (Del. Ch. 1996).

[4] Defendants note that the Complaint identifies a third director who sold stock - Freeman - but he was not a member of VistaCare's board when Plaintiffs filed this action. Mot. (doc. 20) at 6. Thus, he is not relevant to the demand futility analysis. See Harris, 582 A.2d at 230.

1  trading plan." Mot. (doc. 20) at 7. They maintain that under
2  10b5-1 plans, sellers cannot deviate from the plan by changing the
3  amount, price or timing of their sale. 17 C.F.R. § 240.10b5-
4  1(c)(1)(i)(C) (2005). Accordingly, Defendants argue that the
5  timing of such trades cannot be deemed suspicious since they
6  eliminate the ability to time stock sales based upon inside
7  information. Mot. (doc. 20) at 7.
8       Second, Defendants assert that Plaintiffs have not pled facts
9  that indicate that a majority of VistaCare's board committed an
10 actionable breach of fiduciary duty. Id. at 7-9. Delaware law
11 limits the fiduciary breaches for which a director may be liable to
12 a company. Section 102(b)(7) of the Delaware General Corporation
13 Law permits shareholders to ratify a charter provision insulating
14 directors from liability for all fiduciary breaches that result
15 from mistake or negligence. 8 DEL. C. § 102(b)(7). The parties do
16 not dispute that VistaCare's shareholders have approved such a
17 provision. Mot. (doc. 20) at 7; Resp. (doc. 32) at 17. Hence,
18 only fiduciary breaches involving intentional misconduct, bad faith
19 or disloyalty can form the basis of a cause of action against the
20 directors. See Malpiede v. Townson, 780 A.2d 1075, 1094-95 (Del.
21 2001). In order to show the requisite bad faith, a plaintiff must
22 demonstrate that a defendant "allowed a situation to develop and
23 continue which exposed the corporation to enormous [] liability and
24 that in so doing they violated a duty to be active monitors of
25 corporate performance." Caremark, 698 A.2d at 967.
26      Here, Defendants contend that the core of Plaintiffs'
27 allegations is that the directors permitted VistaCare to wrongly
28 predict the amount of Medicare cap reimbursements it would owe.

1  Mot. (doc. 20) at 7-8.  However, they maintain that Plaintiffs
2  merely assert without factual support that Defendants knowingly
3  participated in the alleged wrongdoing.  Id. at 8.  "[P]laintiffs
4  do not allege how any director was involved in VistaCare's efforts
5  to estimate reserves for future Medicare cap payments. Plaintiffs
6  do not identify a single corporate document, conversation, or board
7  meeting that purportedly appraised any board member, much less a
8  majority, that additional reserves for future Medicare cap
9  assessments were necessary."  Id.  For these reasons, Defendants
10 argue that none of VistaCare's directors face a substantial
11 likelihood of being found liable to VistaCare for intentionally
12 breaching their fiduciary duty.  Id. at 9.

13      Third, Defendants assert that Plaintiffs' remaining arguments
14 for demand futility are generalized statements applicable to any
15 director of a public company and, thus, are irrelevant.  Mot. (doc.
16 20) at 9.  Specifically, Defendants assert that Plaintiffs' claims
17 that (1) the Director Defendants engaged in the alleged wrongdoing
18 to "protect and enhance" their positions, and (2) that demand is
19 futile because Defendants would have to "sue themselves," resulting
20 in a loss of insurance and/or personal liability in excess of
21 insurance coverage limits, are arguments that have been
22 consistently rejected by courts.  Id. (citing Growbow v. Perot, 539
23 A.2d 180, 188 (Del. 1988); Lewis v. Straetz, 1986 WL 2252, at *4-*5
24 (Del. Ch. Feb. 12, 1986); Brehm, 746 A.2d at 257 n.34; Aronson, 473
25 A.2d at 818; Decker v. Clausen, No. Civ. A. Nos. 10.684, 10,685,
26 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989)).  Defendants
27 maintain that such "boilerplate allegations" do not sufficiently
28 plead demand futility.  Id.

In response to Defendants' arguments, Plaintiffs assert that they have met their burden for demonstrating demand futility in this case. Resp. (doc. 32) at 5. "[P]laintiffs' burden here is not to prove wrongdoing or demonstrate that they are likely to win on the merits; rather, plaintiffs' burden at the pleading stage is only to allege particularized facts which, if true, would give a reasonable shareholder reason to doubt the ability of four of the seven members of the VistaCare Board to consider a demand." Id.

First, Plaintiffs maintain that Defendants Slager and Fine are directly interested in the insider trading allegations in the Complaint because each of them received a personal financial benefit from those transactions. Id. at 7. Moreover, Plaintiffs allege that Slager and Fine knowingly traded large percentages of their holdings in VistaCare while in possession of undisclosed material adverse information, in order to personally profit from the artificially inflated price of the company's stock. Id. at 7-8. Plaintiffs note that in the Complaint, they stated:

> As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the improper accounting. While in possession of this material adverse non-public information regarding the Company...
>
> Slager sold 116,000 shares of VistaCare stock for proceeds of $3,949,288.67, which represents more than ten times the total compensation paid to Slager during FY:03. ...he sold 36% of his total holdings during the Relevant Period; and
>
> Fine sold 41,500 shares of VistaCare stock for proceeds of $1,125,012.60. ...he sold 57% of his total holdings during the Relevant Period. Because these defendants received personal financial benefits from the challenged insider trading

1  　　　　transactions, these defendants are interested and
2  　　　　demand upon them is futile.

3  Complt. (doc. 1) at ¶ 67(a)(i)-(ii). Under "the standard set
4  forth in" <u>Zimmerman v. Braddock</u>, No. 18473-NC, 2005 WL 2266566, at
5  *8 (Del. Ch. Sept. 8, 2005), Plaintiffs argue that they have
6  adequately alleged that Slager and Fine had knowledge of material
7  information that formed the basis of their trades, subjecting them
8  to a "substantial likelihood of liability and rendering them
9  incapable of impartially evaluating a demand to commence and
10 vigorously prosecute this action." Resp. (doc. 32) at 8.

11 　　　　Second, Plaintiffs argue that Defendants McBride, Klisares
12 and Matricaria, all members of the Audit Committee, lack
13 independence and are interested because they face a substantial
14 likelihood of liability for their involvement in the dissemination
15 of false and misleading statements. <u>Id.</u> Plaintiffs assert that
16 there is "no doubt" that the press releases, Forms 10-Q and Form
17 10-K issued during the relevant period were false and misleading.
18 <u>Id.</u> They base this assertion on the Honorable Frederick J.
19 Martone's finding that "similar facts alleged by plaintiffs in a
20 related class action demonstrate the falsity of these statements."
21 <u>Id.</u> (citing <u>In re VistaCare Inc. Sec. Litig.</u>, No. 04-CV-1661-PHX-
22 FJM, Order at 3 (D. Ariz. Aug. 18, 2005)).

23 　　　　Plaintiffs note that the Audit Committee Charter defines the
24 Audit Committee's responsibilities as:
25 　　　　　...assist[ing] the Board of Directors in
　　　　　　fulfilling its responsibility for oversight of the
26 　　　　　quality and integrity of the accounting, auditing,
　　　　　　and reporting practices of the company, and such
27 　　　　　other duties as directed by the Board. The
　　　　　　Committee's role includes a particular focus on
28 　　　　　the qualitative aspects of financial reporting to

|   |   |
|---|---|
| 1 | shareholders, and on the company's processes to manage business and financial risk, and for |
| 2 | compliance with significant applicable legal, ethical, and regulatory requirements. |
| 3 |   |

Complt. (doc. 1) at ¶ 67(c). Plaintiffs maintain that to accomplish this role, the Charter expressly requires the Audit Committee to evaluate the "[s]tatus of significant accounting estimates and judgments (e.g., reserves) and special issues (e.g., major transactions, related party transactions, accounting changes)," to conduct a "[r]eview of the Annual Report on Form 10-K and proxy statement, including MD&A," to "[d]iscuss earnings press releases and other financial information and earnings guidance provided to analysts and rating agencies," to conduct a "[r]eview of Quarterly Reports on Form 10-Q, including MD&A," and to conduct an "[a]ssessment of internal control" at least annually. Id.

Plaintiffs argue that "[d]espite their duties to ensure that VistaCare issued proper financial statements and guidance and their personal review of those statements, the members of the Audit Committee allowed the false press releases and financial statements and even recommended to the Board to include the false financial statements in VistaCare's Form 10-K filed with the SEC for the Fiscal Year 2003." Resp. (doc. 32) at 9-10. Thus, they assert that any demand on the members of the Audit Committee would have been futile, because the members were actively involved in the review and dissemination of all of the statements Plaintiffs allege were false and misleading. Id. at 10.

. . .

### B. Control of a Majority of the Board by an Interested Director

Defendants contend that their motion to dismiss should be granted because Plaintiffs have failed to show that any interested director controlled a majority of the directors on the VistaCare board. Mot. (doc. 20) at 10. At the outset, Defendants maintain that because Plaintiffs have not shown that any director lacks independence, the issue of control is irrelevant. Id. Moreover, Defendants argue that Plaintiffs have not produced any facts that establish that any director controlled or "dominated" the board. Id. They contend that any arguments asserting that such domination existed because (1) the directors, who were members of the Nominating and Corporate Governance Committee, "singularly control the other defendants' awards and positions[,]" or (2) the directors held professional relationships with each other, are irrelevant. Id. Defendants argue that Plaintiffs do not, and cannot, allege any facts demonstrating that any interested director controlled other directors. Id. at 11.

In contrast, Plaintiffs again assert that they have met their burden for demonstrating demand futility in this case. Resp. (doc. 32) at 5. First, Plaintiffs argue that Defendant Slager is controlled by the members of the Compensation Committee due to his employment as President, Chairman and Chief Operating Officer ("CEO") of VistaCare. Id. at 6. They contend that Slager cannot be independent because his principal profession is his employment with VistaCare, pursuant to which he receives "$375,798 in salary alone." Id. Hence, Plaintiffs assert that Slager is not independent from Defendants Johnson, Matricaria and Klisares,

because they comprise the Compensation Committee and are responsible for evaluating and determining the compensation of the CEO. Id. "Because of his status as an inside director, and the concomitant substantial compensation he receives, defendant Slager could not consider a demand adverse to the Director Defendants serving on the Compensation Committee." Id. (citing the following in support of their argument: Rales, 634 A.2d at 937; Steiner v. Meyerson, No. 13139, 1995 WL 441999, at *10 (Del. Ch. July 19, 1995); In re The Student Loan Corp. Derivative Litig., No. 17799, 2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002)).

Second, Plaintiffs assert that Defendants Slager, Klisares and Faeder lack independence due to their "entangling relationships." Resp. (doc. 32) at 6. Plaintiffs note that Slager, Klisares and Faeder are "long-time business associates, all involved in the start-up and/or development of Karrington Health, Inc. ("Karrington"), which in 1998, was acquired by Sunrise Assisted Living, Inc." Id. at 11. Slager was the founder, Chairman and CEO of Karrington, and Klisares was COO and President of Karrington. Id. In addition, Plaintiffs note that Slager is the Executive Vice President and a director of Sunrise, and that Klisares is also a director of Sunrise. Id. "As a result, these entangled relationships create strong incentives for these defendants to avoid suing each other, thereby showing demand would have been futile." Id.

**V. Analysis - Demand Futility**

    **A. Alleged Insider Trades by Slager and Fine**

In order to satisfactorily show that Slager and Fine face a "substantial likelihood" of liability for insider trading,

1  Plaintiffs must plead facts that support the conclusion "that each
2  sale by each individual defendant was entered into and completed
3  on the basis of, and because of adverse material non-public
4  information." <u>Guttman</u>, 823 A.2d at 505 (citing <u>Stepak v. Ross</u>,
5  1985 WL 21137, at *5 (Del. Ch. Sept. 5, 1985)).  Plaintiffs, in
6  their response, assert that under "the standard set forth in"
7  <u>Zimmerman v. Braddock</u>, No. 18473-NC, 2005 WL 2266566, at *8 (Del.
8  Ch. Sept. 8, 2005), they have adequately alleged that Slager and
9  Fine had knowledge of material information that formed the basis
10 of their trades, subjecting them to a "substantial likelihood of
11 liability."  The Court, however, finds this statement misplaced,
12 as the "standard" utilized in <u>Zimmerman</u> is the same as that
13 defined in <u>Guttman</u>, holding that "[t]o proceed on an insider
14 selling claim, a plaintiff must show 'that each sale by each
15 individual defendant was entered into and completed on the basis
16 of, and because of, adverse material non-public information.'"
17 <u>Zimmerman</u>, No. 18473-NC, 2005 WL 2266566, at *8 (quoting <u>Guttman</u>,
18 823 A.2d at 505).

19      The court in <u>Zimmerman</u> noted that the plaintiffs in that
20 matter had adequately pled facts that created a reasonable
21 inference that the specific defendants had "knowledge-directly and
22 by imputation-of [the companies'] problems."  <u>Id.</u>  In contrast
23 with the case at bar, the plaintiffs in <u>Zimmerman</u> pled particular
24 facts that indicated that concerns about the companies at issue in
25 the case had been expressed to the defendants and that the
26 defendants had access to "Pricing Reports, Demographic Analyses,
27 Network Operations Center Reports, and Promotion Reconciliation
28 Reports," all of which detailed enough information to reveal the

1  difficulties one of the companies faced.  Id.  Here, Plaintiffs
2  plead no such facts.
3      In the case at bar, Plaintiffs claim that "[a]s a result of
4  their access to and review of internal corporate documents;
5  conversations and connections with other corporate officers,
6  employees and directors; and attendance at management and Board
7  meetings, [Slager and Fine] knew the adverse non-public
8  information regarding the improper accounting." Complt. (doc. 1)
9  at ¶ 67(a). Such conclusory statements do not satisfy the strict
10 requirements of Rule 23.1. Plaintiffs fail to indicate how or in
11 what form the "non-public information regarding the improper
12 accounting" was disclosed to Slager and Fine through any of these
13 listed mechanisms. Absent from the Complaint are well-pled,
14 particularized facts detailing the specific information that would
15 have come to their attention in their roles at VistaCare, and an
16 indication as to why they would have perceived any accounting
17 irregularities. In the absence of specific facts that support a
18 rational inference that Slager or Fine had some basis to believe
19 that VistaCare's financial statements were materially misleading
20 in a manner that inflated the company's stock price, the mere fact
21 that two of the directors sold large portions of their stock does
22 not support the conclusion that they face a real threat of
23 liability. Consequently, the Court concludes that Plaintiffs have
24 failed to plead particular facts that show that Slager and Fine
25 face a "substantial likelihood" of liability for insider trading.
26     **B. The Audit Committee**
27     The Court also does not find that Plaintiffs have
28 successfully pled particular facts that establish their Caremark

claim. To establish that VistaCare's Audit Committee members are "interested" directors, Plaintiffs must plead facts that show that each member, who was a director, faces a "substantial likelihood" of liability. "The 'mere threat' of personal liability in the derivative action does not render a director interested; however, a 'substantial likelihood' of personal liability prevents a director from impartially considering a demand." Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995).

Here, the parties do not dispute that the directors are exempt from liability for violations of their duty of care. See Mot. (doc. 20) at 7; Resp. (doc. 32) at 17. Additionally, the parties agree that to show a "'substantial likelihood' of personal liability," Plaintiffs must plead specific facts that implicate breaches of the directors' duties of loyalty and good faith. Id.; see also Emerald Partners v. Berlin, 726 A.2d 1215, 1227 (Del. 1999). The Court finds that Plaintiffs have failed to plead such facts.

Here, Plaintiffs basically assert that the Audit Committee, which includes Director Defendants McBride, Klisares and Matricaria, "allowed the false press releases and financial statements and even recommended to the Board to include the false financial statements in VistaCare's Form 10-K filed with the SEC for the Fiscal Year 2003." Resp. (doc. 32) at 9-10. They allege that such Director Defendants were "required to take an active role in the review and dissemination of all of [VistaCare's] financial statements and communications concerning [VistaCare's] results, operations and prospects." Id. at 10. "By failing to properly carry out their duties as guardians of VistaCare's

financial results, [the three Director Defendants] breached their fiduciary duties[.]" Id. Such conclusory claims, however, are not sufficient to survive a motion to dismiss.

In Guttman, the court considered Caremark claims brought by shareholders against directors of a specific corporation. 823 A.2d at 499, 505-07. The plaintiffs in Guttman asserted demand futility because, among other things, the defendant directors "failed to oversee the process by which [the corporation] prepared its financial statements so as to ensure that the resulting statements had integrity and met legal standards." Id. at 505. Thus, the plaintiffs argued that the defendant directors faced liability for breaches of their fiduciary duties and, therefore, lacked the ability to act impartially on a demand. Id. at 499. The court, however, concluded that the plaintiffs failed to sufficiently plead particular facts to establish their claims. Id. at 506-08.

> In this case, the plaintiffs have not come close to pleading a *Caremark* claim. Their conclusory complaint is empty of the kind of fact pleading that is critical to a *Caremark* claim, such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation.

Id. at 506-07. The circumstances described in Guttman are on par with those currently before this Court.

Here, Plaintiffs do not plead particular facts (1) that indicate how Director Defendants McBride, Klisares and Matricaria were involved or failed "to take an active role" in the review and dissemination of the alleged false statements; (2) that designate

a specific false statement that was reviewed and used by the Audit Committee; or (3) that indicate how and when these Defendant Directors learned that any alleged statement was false. The fact that Judge Martone concluded that "similar facts" sufficiently demonstrated the falsity of the contested financial statements in order to survive a motion to dismiss is irrelevant to the analysis of whether the particular Director Defendants in this matter are "interested" for purposes of a demand futility analysis. The mere fact that the documents may have been false is not dispositive on the issue of whether McBride, Klisares and Matricaria face a "substantial likelihood" of liability for breaches of their duties of loyalty or good faith. The Court finds no factual indication of bad faith on the part of Defendants McBride, Klisares and Matricaria. Consequently, the Court concludes that Plaintiffs have failed to plead particular facts that show that such Director Defendants face a "substantial likelihood" of liability.

In light of the fact that the Court finds no Director Defendant to be facing a "substantial likelihood" of liability, the issue of their control over a majority of the VistaCare board is irrelevant and need not be analyzed. Due to Plaintiffs' failure to show that demand on the VistaCare board was futile, Defendants' motion to dismiss shall be granted. Consequently, Defendants' arguments regarding Plaintiffs' alleged failure to state a claim in their Complaint also need not be analyzed by the Court.

Therefore,

IT IS ORDERED that Defendants' motion to dismiss Plaintiffs' consolidated derivative complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) (doc. 20) is GRANTED.

    IT IS FURTHER ORDERED that Individual Defendants' motion to dismiss for lack of jurisdiction (doc. 17) is DENIED as moot.

    DATED this 29th day of August, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record